IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RON WESLEY HAYES                                                      PLAINTIFF

v.                                     Civil No. 4:21-cv-04069

SERGENT HENDERSON, Miller County,
Arkansas; CORPORAL DYLAN MCCRARY,
Texarkana, Arkansas, Police Department (TAPD);
CORPORAL CLAUDIA PHELPS, TAPD; and
OFFICER PAYTON HARRIS, TAPD                             DEFENDANTS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed by Ron Wesley Hayes ("Hayes") pursuant to 42 U.S.C. § 1983. Hayes proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Hayes has asserted two excessive force claims.[1] The first is against Corporal Dylan McCrary, Officer Claudia Phelps, and Officer Payton Harris of the Texarkana Arkansas Police Department (collectively "the TAPD Officers"). The second is against Sergeant Henderson of the Miller County Detention Center ("MCDC"). Hayes proceeds against Defendants in their individual capacities only.[2]

---

[1] Hayes' denial of medical care claim against Nurse King was previously dismissed at the summary judgment stage. (ECF No. 100).
[2] All official capacity claims were dismissed. (ECF No. 31). Additionally, all claims against the TAPD Chief of Police Robert Harrison were dismissed. *Id.*

1

The case is before the Court on the Motion for Summary Judgment (ECF No. 81) filed by the TAPD Officers and the Motion for Summary Judgment (ECF No. 84) filed by Sergeant Henderson. Hayes has responded to both Motions. (ECF Nos. 94-96). Defendants have replied (ECF Nos. 97 & 98). The Motions are now ready for decision.

## I.  BACKGROUND

The Second Amended Complaint (ECF No. 9) is the operative complaint. In it, Hayes generally alleges that a TAPD officer, then identified only as a John Doe Defendant, "broke" his "face" in March or April of 2019. *Id.* at 4 & 6. While at the MCDC, Hayes alleges Sergeant Henderson slammed him to the floor "causing [him] to have the secon[d]" surgery. *Id.* at 6).

Hayes had two encounters with the TAPD during March and April of 2019. The first encounter occurred on March 26, 2019. (ECF No. 83-1 at 1).[3] A police report was prepared about this encounter by Officer William Daugherty.[4] *Id.* The report does not indicate that any of the named TAPD Officers were present at the scene or otherwise involved in this incident. *Id.* at 1-21. According to the report, Hayes was knocked unconscious and taken to the hospital. *Id.* at 19. An X-ray and CT scan showed Hayes had a chipped bone in his jaw. *Id.*

The second encounter occurred on April 18, 2019. (ECF No. 83-2 at 1). A police report about this encounter was prepared by Corporal McCrary. *Id.* Corporal McCrary[5] responded to a call that two black males were fighting at 1619 Line Ferry Road and one had a firearm. *Id.* at 11. When he arrived, Corporal McCrary "observed through the front door of the residence a black male identified as Ron Hayes pointing a firearm at another black male, who was later identified as Marcus Hines." *Id.* Corporal Phelps arrived and both men were placed in handcuffs. *Id.* Officer

---

[3] All citations to the summary judgment record will be to the CM/ECF document and page number.
[4] Officer Daugherty is not a named Defendant in this action.
[5] Corporal McCrary at the time held the rank of officer. (ECF No. 83-2 at 11).

2

Harris arrived and secured the weapon. *Id.* Corporal McCrary interviewed Hines who stated that Hayes became irate after Hines stated he did not have access to any methamphetamine. *Id.* Hines attempted to calm Hayes down but was unable to do so. *Id.* When he attempted to leave the room, Hines reported that "Hayes grabbed him in a bear hug and started slinging him around. Hines[] headbutted Hayes in the face." *Id.* Hayes then threw Hines to the ground and grabbed a handgun that was in the closet and pointed it at Hines. *Id.*

When the officers were done questioning Hines, they attempted to place Hayes in Corporal McCrary's patrol unit. (ECF No. 83-2 at 11). "Hayes sat down, then stood up and refused to sit again. Officer Harris told him to sit or he was going to get sprayed." *Id.* Hayes then attempted to flee; however, he was restrained after a brief foot pursuit and placed in the patrol car. *Id.* Hayes was booked on aggravated assault, possession of a firearm by certain persons, and a hold was placed on Hayes for TAPD for misdemeanor charges. *Id.*

A second police narrative was prepared by Corporal Phelps. (ECF No. 83-2 at 19). Corporal Phelps reported that Hayes stated that he and Hines had been with others at Union Village and "somehow he ended up at Hines' house." *Id.* Hayes indicated he was asleep and had no recollection of getting to the house. *Id.* When he woke, Hayes stated he told Hines he had some methamphetamine on him, but he did not. *Id.* According to Hayes, "Hines became upset after finding out he did not have any meth and started beating him up." *Id.* Hayes reported he feared for his life so grabbed a gun to defend himself. *Id.* Hayes indicated the gun was not his and belonged to Hines. *Id.*

A third narrative was prepared by Officer Harris. (ECF No. 83-2 at 22). Officer Harris secured the gun. *Id.* He then had a criminal history run on Hayes. *Id.* Dispatch confirmed Hayes was a convicted felon. *Id.*

According to Officer Harris, when they attempted to place Hayes in the patrol unit, he began to plead with them and would not sit down in the car even after multiple commands. (ECF No. 83-2 at 22). Hayes was advised he would be pepper sprayed if he refused to sit. *Id.* Hayes "then attempted to flee from us by pulling and running away but we immediately stopped him and placed him in the patrol unit." *Id.* Hayes requested his pants which were on the ground near the doorway. *Id.* One of the pockets contained a "packet of suspected synthetic marijuana." *Id.*

With respect to Sergeant Henderson, Hayes has not provided a date on which Sergeant Henderson slammed him to the floor. (ECF No. 9 at 6). An MCDC incident report was completed on April 18, 2019, stating that Hayes was "showing extreme aggress[s]ive behavior towards both staff and officers." (ECF No. 84-4 at 3). Hayes was moved to lock-down. *Id.* He was being escorted by Sergeant Henderson[6] but became more aggressive and threatened staff including Sergeant Henderson. *Id.* Hayes "pulled both of his hands into a fist in an aggres[s]ive manner." *Id.* At this time the report indicates, Sergeant Henderson assisted Hayes down the stairs. *Id.* Officer Studdard indicates he grabbed Hayes' legs to assist him down the stairs. Once in Max Hall 2, Hayes was "assisted to the floor. After [Hayes] refused restraints, I Officer Studdard took [Hayes'] right arm and placed it in restraints afterwards us[]ing the same procedure place [Hayes'] left hand in restraints." *Id.* at 3-4. Hayes was "assisted off the ground" and escorted to a cell. *Id.* at 4. Hayes then refused to relinquish the restraints. *Id.* After spending some time speaking with him, Sergeant Henderson removed the restraints without any additional use of force. *Id.*

Hayes submitted a medical request on May 15, 2019, in which he objected to paying for X-rays and doctor's visits because the services were mandatory as officers had jumped him and broken his hand. (ECF No. 84-3 at 1). Hayes submitted a similar request on May 16, 2019, in

---

[6] Henderson's rank is listed as Corporal in this report.

this request he said Miller County was liable because his hand was "hurt on the day [O]fficer [H]enderson jump on me." *Id.* at 2.

## II.  APPLICABLE LAW

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United

States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) each defendant acted under color of state law, and (2) he or she violated a right secured by the constitution. *West v. Atkins,* 487 U.S. 42 (1988); *Dunham v. Wadley,* 195 F.3d 1007, 1009 (8th Cir. 1999). Unquestionably, the named Defendants acted under color of state law. Thus, the sole question is whether the actions of one or more of the Defendants violated Hayes' constitutional rights.

### A.  Motion for Summary Judgment by the TAPD Officers (ECF No. 81)

The TAPD Officers move for summary judgment on the following grounds: (1) only a reasonable amount of force was used to arrest Hayes; and (2) they are entitled to qualified immunity.

The TAPD Officers also suggest Hayes has confused the facts of the two incidents and in reality, asserts no excessive force claim against them. The Court agrees in Hayes' response (ECF No. 94) he makes no argument that Corporal McCrary, Corporal Phelps, or Officer Harris used excessive force against him. Instead, Hayes argues Officer Daugherty, a non-party, used excessive force against him. *Id.* Hayes' only exhibits deal with the March 26, 2019, encounter with Officer Daugherty. (ECF No. 94 at 4-5). In his "affidavit," Hayes mentions the April 18, 2019, encounter with the TAPD Officers but makes no argument they used excessive force. *Id.* at 6.

Hayes made two attempts to add his claim against Officer Daugherty to the case (ECF Nos. 67 & 70). Both were denied as untimely under the Court's Initial Scheduling Order ("ISO"). (ECF Nos. 68 & 72). The ISO set a date of June 16, 2022, to amend pleadings or to join other parties. (ECF No. 40). The ISO also set a date of June 16, 2022, to identify any John or Jane Doe Defendants. *Id.* The TAPD Officers note that they provided Hayes with the incident report from the March 26, 2019, involving Officer Daugherty in their initial mandatory disclosures on April 28, 2022. (ECF No. 45). Hayes did not attempt to add Officer Daugherty as a Defendant until August 4, 2022. (ECF No. 67).

The named TAPD Officers were not involved in the March 26, 2019, incident and Hayes makes no argument excessive force was used during the April 18, 2019, incident. Based on Hayes' Response to the TAPD Officers Motion for Summary Judgment, the TAPD Officers are entitled to summary judgment. Having found that the facts do not make out a constitutional violation, the TAPD Officers are also entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### B. Motion for Summary Judgment by Sergeant Henderson (ECF No. 84)

Sergeant Henderson moves for summary judgment on the following grounds: (1) Hayes failed to exhaust the administrative remedies; (2) only objectively reasonable force was used; and (3) he is entitled to qualified immunity.

#### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system

7

to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

The MCDC has a grievance procedure. (ECF No. 84-2). It sets forth a two-step process. Step One requires the submission of a complaint which is defined as "[a] verbal and/or written communication with staff for informal resolution of an incident, policy, procedure, or condition within the jail which personally/directly affects the inmate. These may be submitted through the KIOSK in the Housing Areas." *Id.* at 1 & 5-6. Step Two requires the filing of formal grievance which is defined as a "[w]ritten communication for formal resolution of an incident, policy, procedure, or condition within the jail which personally affects the inmate filing the grievance. A grievance can only be made subsequent to filing a written complaint and receiving a written response." *Id.* at 1 & 5-6.

4) Inmates must follow the below procedures to submit a grievance:

a) All grievances shall be submitted on a Request for Administrative Remedy Form, jail form 09.01A obtainable from a shift officer or supervisor.

b) At all levels of the grievance or appeal process, it will be the responsibility of the inmate to present only specific facts and circumstances directly relating to the complaint. The inmate should be brief and concise, stating only one issue per form. The inmate should also state the remedy which they are seeking and state what the original complaint addressed. Grievances received without an original complaint and response shall be promptly returned.

    c) Upon completion of the Request for Administrative Remedy Form by the inmate, the form shall be routed to the Facility Warden or Risk Management Officer. A grievance may be returned to the inmate for resubmission if it:

    (1) Contains more than one issue;

    (2) Does not follow the prescribed format;

    (3) Seeks a remedy for matters beyond the facility's control;

    (4) Contains profanity, unless quoting;

    (5) Does not have an original complaint on file.[7]

*Id.* at 5-6. The policy continues by setting forth information regarding the assignment of a grievance number, acknowledgement of the grievance, and the time frame for response. *Id.* at 6.

    By affidavit Jail Administrator Al Landreth states he has reviewed Hayes' grievances and "he did not file any grievance through our process" about Sergeant Henderson slamming his face into the floor. (ECF No. 84-1 at 2). Administrator Landreth notes there are no kiosk entries at all about Sergeant Henderson "slamming [Hayes] to the floor." *Id.* For this reason, Sergeant Henderson contends Hayes failed to exhaust his administrative remedies.

    Hayes admits he did not file a grievance or exhaust his administrative remedies due to the possibility of retaliation, "not only with my well-being as a prisoner, but also under duress reasons." (ECF No. 96 at 1). Hayes does not indicate he was threatened with retaliation; Hayes does not explain how he was "under duress." Hayes provides no facts in support of these assertions. Hayes notes the grievance procedures are not dated or "reviewed at least annually, leaving open the possibility of changing policies and procedures as needed when deemed necessary

---

[7] Although the term complaint is defined to include verbal communications, clearly to file a grievance a written complaint must be made.

9

to their advantage." *Id*. However, he makes no argument that the grievance procedure was not in place or was changed during the time frame at issue. Hayes makes no argument his medical requests mentioning an injury and the one referencing a use of force by Sergeant Henderson somehow constitute a grievance or complies with the grievance procedure—which it clearly does not.

As noted above, failure to exhaust may be excused if administrative remedies are unavailable. "Administrative remedies are not available if 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *East v. Minnehaha Cnty.,* 986 F.3d 816, 821 (8th Cir. 2021)(quoting *Ross v. Blake,* 578 U.S. 632, 644 (2016)). In *East*, the Eighth Circuit noted the circuits differed on the "test to determine whether a fear of retaliation excuses an inmate from exhaustion requirements." *Id. Compare Rinaldi v. United States,* 904 F.3d 257, 269 (3d Cir. 2018)(requiring inmate to show subjective and objective elements: that the threat actually deterred filing a grievance and that a reasonable inmate of ordinary firmness would have failed to file it) *with Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir. 2004)(requiring inmate to show only the objective elements: that a reasonable inmate of ordinary firmness would have failed to file a grievance), *abrogated on other grounds by Ross,* 578 U.S. at 648-49. The Eighth Circuit did not explicitly adopt either test instead holding that:

> Under either test, East's claims fail because he cannot show that a reasonable inmate of ordinary firmness would have failed to file a grievance in his situation. "[T]here must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison grievance system." *McBride [v. Lopez,* 807 F.3d 982, 988 (9th Cir. 2015)]. *See also Lucente v. Cnty. of Suffolk,* 980 F.3d 284, 313 (2d Cir. 2020)(inmate did not demonstrate any connection between the alleged violence against other inmates and filing a grievance).

*East,* 986 F.3d at 821.

Here, Hayes points to no statements made by Sergeant Henderson, or any other jail staff, threatening him in any way if he used the grievance system. Hayes does point to any hostile interaction with Sergeant Henderson, or any other jail staff, that could be reasonably understood to deter him, or an reasonable inmate of ordinary firmness, from using the grievance system. "[G]eneral and unsubstantiated fears about possible retaliation" are insufficient to excuse exhaustion. *Rodriguez v. Cnty. of Los Angeles,* 891 F.3d 776, 794 (9th Cir. 2018); *see also Singh v. Lynch,* 460 Fed. Appx. 45, 47-48 (2d Cir. 2012)(other inmates' warnings to plaintiff that guard was out to get him lacked enough particulars to excuse exhaustion).

Thus, the failure to exhaust is fatal to Hayes' claims against Sergeant Henderson. As Sergeant Henderson is entitled to summary judgment on the grounds Hayes failed to exhaust his administrative remedies, there is no need to discuss Sergeant Henderson's alternative arguments.

### IV. CONCLUSION

For the reasons stated above, it is recommended that:

- the Motion for Summary Judgment (ECF No. 81) filed by Corporal McCrary, Corporal Phelps, and Officer Harris should be **GRANTED;**
- the Motion for Summary Judgment (ECF No. 84) filed by Sergeant Henderson should be **GRANTED;**
- and this case be **DIMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.**

   **DATED** this **5th day of April 2023**.

                                        /s/ *Barry A. Bryant*
                                        HON. BARRY A. BRYANT
                                        UNITED STATES MAGISTRATE JUDGE